EDWARDS, Judge.
Four civil servants appeal the Commission’s partial dismissal of their appeal of the Director’s reallocation of their job to positions of lower pay. We affirm.
Plaintiffs were informed by letter from the Director of the Department of Civil *237 Service on December 23, 1982, that their positions had been reallocated from Equipment Operator I to Laborer-Utility. Plaintiffs appealed this reallocation to the Director pursuant to Civil Service Rule 5.3 and to the Civil Service Commission pursuant to Rule 13.10. The Director affirmed the reallocation, but after plaintiffs’ objection that his decision was based on documents not furnished to them, he rescinded that decision and ordered a new desk audit by personnel who had not been involved in the audit which culminated in the original reallocation. Nonetheless after the second audit, the Director advised the plaintiffs and their counsel that, based on this new evaluation, he was reallocating the positions to the class of Laborer-Utility. This time, however, the Director sent copies of the audit reports along with his letter to counsel for plaintiffs.
In their appeal to the Civil Service Commission plaintiffs alleged that the reallocation was improper because (1) it resulted in their being demoted without cause, (2) the reallocation was the result of discrimination, and (3) since their duties had not changed, the reallocation violated Civil Service Rule 1.32. The Commission granted the request of the Department of Civil Service for summary dismissal as to the first two of plaintiffs’ three claims, but ordered the appeal referred to the merits to consider whether plaintiffs’ duties had changed.[1]
DEMOTION
There is no question that if a position is reallocated downward, the incumbent is by definition demoted. Civil Service Rule 1.11 defines a demotion as “a change of a permanent or a probationary employee from a position of one class to a position of another class for which a lower minimum rate of pay is prescribed.” Yet this does not end the inquiry.
The new constitution did not carry over the 1921 constitution’s prohibition of demotion without cause expressed in writing. See La. Const, of 1921, art. XIV, § 15(I)(b). Consequently plaintiffs’ reliance on Perkins v. Director of Personnel, 220 So.2d 253 (La.App. 1st Cir.1969), decided under the constitution of 1921, is misplaced. The Perkins court reasoned that a reallocation downward was a demotion without cause, and therefore was unconstitutional. 220 So.2d at 256.
The new constitution does, however, prohibit disciplinary action without cause expressed in writing. La. Const, art. X, § 8(A). Yet plaintiffs’ demotions did not result from disciplinary actions. In fact a reallocation cannot be a disciplinary action, since it is based on the duties required of a worker rather than on his level of performance of those duties. Moreover, the actions are taken by different people: The appointing authority takes disciplinary action, see Civil Service Rule 12.1, while the Director reallocates,[2] see Civil Service Rule 5.2(a). Accordingly the reallocation did not violate the Civil Service provisions of the present constitution.
*238 DISCRIMINATION
Plaintiffs have alleged discrimination by both their supervisor and the Director. Plaintiffs alleged that their supervisor had personal animosity toward them, but they also said that their duties have remained unchanged. Consequently their supervisor’s personal animosity could have no bearing on the reallocation. The Director makes reallocations strictly on the basis of comparing the assigned duties of an employee to a uniform pay plan, to accomplish the objective of equal pay for equal work.
Although we are mindful of the fact that a supervisor might be able to discriminate against an employee he disliked by reducing the employee’s duties to the point that his job would eventually be reallocated downward, see, e.g., Appeal of Gladys Rich, Docket Nos. 2010, 2520, and 2614 (La.Civil Service Comm’n, June 3, 1983), this is not what plaintiffs have alleged.[3] Moreover, the question whether their duties have changed so as to merit the reallocation is yet to be resolved in their appeal still pending before the Commission.
Any employee affected by a reallocation may have his case reviewed by the Director, and the Director’s decision is final “unless there is an allegation that his ruling has been discriminatory.” Civil Service Rule 5.3(a). Upon an allegation that the Director’s decision has been discriminatory, a person may appeal to the Commission. Civil Service Rule 13.10(d).
Where discrimination is alleged to be a basis for appeal, specific facts supporting the conclusion of discrimination must be alleged in detail. The specific facts required will vary depending on the nature of the appeal; however, the facts must be alleged in sufficient detail to enable the agency to prepare a defense. A conclusion of discrimination is not sufficient.
Civil Service Rule 13.11(d).
Plaintiffs’ allegations that the Director’s ruling was discriminatory consisted merely of statements that he applied a disparate standard in deciding their appeal. Plaintiffs did not allege with particularity any action by the Director which constituted discrimination. The Commission was correct in concluding that plaintiffs failed to perfect an appeal based on discrimination by either their supervisor or the Director.
DUE PROCESS
Finally, plaintiffs allege that the method by which reallocations are reviewed violates due process. The reallocation review process is established by Civil Service Rules 5.3(a) and 13.10(d), and these rules have the effect of law. See La. Const, art. X, § 10(A)(4). So long as these rules constitute a reasonable exercise of the Commission’s rule-making power and do not violate basic constitutional rights, they must be enforced. Shelton v. Southeastern Louisiana University, 431 So.2d 437, 439 (La.App. 1st Cir.1983).
Although plaintiffs are unquestionably entitled to due process, what constitutes due process varies depending upon the interests involved. Due process is particularly flexible in the area of administrative law; it does not always necessitate a full trial. Smith v. Division of Administration, 415 So.2d 381, 385 (La.App. 1st Cir.1982). No one has a vested right to any particular procedure. Hamilton v. Louisiana Health & Human Resources Administration, 341 So.2d 1190, 1193 (La.App. 1st Cir.), cert. denied, 344 So.2d 4 (La.1977).
The governmental interest involved here is the maintenance of a uniform pay plan. The private interests are the employees’ pay and their potential earning ability. The Civil Service Rules are the result of an attempt at a reasonable compromise whereby the Commission is able to fulfill its constitutionally mandated responsibility to maintain a uniform pay plan and yet afford employees some protection.[4]
*239 An employee has a right to challenge a downward reallocation, first by requesting that the Director review the reallocation, and then by appealing to the Civil Service Commission. Civil Service Rules 5.3(a) and 13.10(d). Nevertheless, the employee does not have an absolute right to an evidentiary hearing before the Commission on his appeal of a reallocation.[5]
An evidentiary hearing would serve no useful purpose; the relevant facts are undisputed. In the reallocation process, the only relevant facts are the employee’s duties and responsibilities and the contents of the class specifications. Because of the way the reallocation process works, by the time an employee asks for a review of his reallocation he has already submitted and his supervisor has verified a description of his duties, and a desk audit of the employee’s job has been conducted. Thus the employee’s duties and responsibilities are in writing and undisputed. The class specifications, which have already been developed by the Director and approved by the Commission, are also in writing. See Civil Service Rule 5.1. The employee’s reasons for contesting the reallocation are contained in his written request for review. Consequently all that remains is for the Director to decide which class specification encompasses the duties listed.
The Director’s decision is then final unless the employee appeals to the Commission, alleging that the Director’s decision was discriminatory and specifically pleading facts supporting discrimination. If the employee does so, he is provided an evidentiary hearing before the Commission. Thus the employee affected by the downward reallocation is given notice and an opportunity to have his reallocation reviewed by the Director, and under certain circumstances, a right to an evidentiary hearing before the Commission. Considering both the private and governmental interests involved, this procedure conducted in accordance with Civil Service Rules 5.3(a) and 13.10(d) fulfills the requirements of due process.
For the foregoing reasons the decision of the Commission is affirmed.
AFFIRMED.
SHORTESS, J., dissents and assigns reasons.

. Plaintiffs’ appeal on this issue, therefore, is still pending before the Commission.

. Under the old constitution, the State Civil Service Commission had to adopt a classification plan, which required the classifications of positions "according to similarity of duties performed and responsibilities assumed, so that the same qualifications ... and the same ... pay ... applied to all positions in the same class." It was the Director’s job to allocate the positions of the employees to positions in the pay plan, and to make allocations or reallocations of positions necessitated by the creation of new classes, or the division, alteration, or abolition of existing classes. Employees affected by such changes had the right to appeal to the Director and later to the Commission. La. Const, of 1921, art. XIV, § 15(I)(b).
In 1972 the constitution was amended to eliminate the language from section 15(I)(b), and the Commission was simply granted the power "to adopt, amend, repeal and enforce rules which have the effect of law, regulating ... personnel transactions.”
Then in the 1974 constitution, no provision for reallocation was made. The Commissioner was simply granted "broad and general rule-making ... powers for the administration and regulation of the classified service,” and the Commission was given the responsibility of adopting a uniform classification and pay plan. La. Const, art. X, § 10(A)(1).

. See the opinion of the Civil Service Commission for a more detailed discussion.

. When an employee’s position is reallocated downward, his pay is protected for two years. *239 His pay is frozen, and he no longer earns merit increases in the former pay range, but rather earns merit increases in the new (lower) pay range. Civil Service Rule 6.28(b).

. In 1972 the old constitution was amended to specifically eliminate the right to an evidentiary hearing. Compare La. Const, of 1921, art. XIV § 15(I)(b) with 1972 La. Acts 778 (adopted as a constitutional amendment, Nov. 7, 1972). The new constitution makes no provision for a hearing.